# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

**RECEIVED**

MAY 19 2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| **EDWARD BISSAU MENDY** | **CIVIL ACTION** |
| **Plaintiff** | |
| -versus- | **CASE NO.:** _____ |
| **TENNESSEE STATE ATHLETIC COMMISSION,** | |
| **ROXANA GUMUCIO,** | |
| **KATIE LONG,** | **DIVISION:** _____ |
| **JESSE GENTRY,** | |
| **EVAN GUBERA,** | |
| **JIMMY ADAMS,** | **MAGISTRATE:** _____ |
| **ASHLEY ADAMS,** | |
| **COUNTRYBOX, LLC,** | **COMPLAINT,** |
| **JIMMY ADAMS MEDIA, LLC,** | **PETITION FOR DAMAGES,** |
| **JIMMY ADAMS PROMOTIONS, LLC,** | **and JURY DAMAND** |
| **FIRST FARMERS AND MERCHANTS BANK,** | |
| **SHANE CASEY,** | |
| **DON KING PRODUCTIONS,** | |
| **DON KING,** | |
| **KANE BROWN,** | |
| **KB BOXING, INC, and** | |
| **DOES 1 THROUGH DOES 20** | |
| **Defendants** | |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## COMPLAINT, PETITION FOR DAMAGES and JURY DEMAND

**NOW INTO COURT,** through the undersigned counsel, comes Plaintiff, EDWARD

BISSAU MENDY, and upon suggesting to this honorable court that Plaintiff wishes to bring a

Complaint, Petition for Damages and Jury Demand against the named Defendants, and various of

their unknown co-conspirators involved in a scheme to deprive Plaintiff of his federally protected

and state protected constitutional rights and that have caused harm to Plaintiff, respectfully avers

as follows:

## JURISDICTION

1. This Court has personal jurisdiction over the Defendants because the Defendants are domiciled in the District, have transacted business in this District, and/or because the Defendants have committed various acts proscribed by the law in this District.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States as a Federal Question.

3. Pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), this Court has supplemental jurisdiction over the subject matter of the state claims asserted by the Plaintiffs in this action because those claims are so related to the claims asserted by Plaintiffs under federal law that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the federal question claims.

4. Jurisdiction of this Court is appropriate based upon federal question pursuant to 28 U.S.C. Sections 1331.

5. Original Jurisdiction of this matter is conferred upon the Court by 28 U.S.C. Section 1331. Supplemental jurisdiction over State law claims is conferred upon this Court by 28 U.S.C. Section 1367.

6. District Court's Jurisdiction The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." Plaintiff's suit against the defendants was based upon 42 U.S.C.A. § 1983.

7. United States law requires that those who deprive any person of rights and privileges protected by the Constitution of the United States provided by state law be liable in action at law, suit in equity, or other appropriate measure. 42 U.S.C.A. §1983.

8. In the instant matter, Plaintiff, Edward Bissau Mendy ("Mendy"), is a United States citizen and resident of New Orleans, Tennessee.

9. Plaintiff Mendy is entitled to relief sustained as a result of the actions and omissions of Defendants including attorneys' fees, costs, expenses and psychological and emotional distress experienced as a result of his wrongful termination and the long-endured retaliatory and discriminatory action as well as libel and slander and others damages at the hands of Tennessee State Athletic Commission and various unnamed co-conspirators (DOES 1 through DOES 20).

10. Federal jurisdiction over pendant state claims is governed by 28 U.S.C. § 1367, which states: "[I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

11. Venue is proper within this jurisdiction pursuant to 28 U. S. C. Section 1391(b) because the claims stated herein, and the unlawful practices complained of herein occurred within the Middle District of Tennessee.

12. Plaintiff is informed and believe, and based thereon allege, that at all relevant times, the Defendants engaged in certain wrongful acts alleged below in the Middle District of Tennessee and engaged in other unlawful acts outside this District which caused injury to Plaintiff in this District.

13. Further, on information and belief, all of the named defendants live within the Middle District of Tennessee. Accordingly, venue properly lies in this District.

## THE PARTIES

14. Made Plaintiff herein (hereinafter also collectively referred to as "Plaintiff") is EDWARD BISSAU MENDY (hereinafter also referred to "Mendy"), a natural person of the full age of majority, and having his principal place of residence in Orleans Parish, State of Tennessee. On information and belief, Mendy was always and is a citizen of the United States and the State of New Jersey at all times relevant.

15. Made Defendants herein (hereinafter also collectively referred to as "Defendants") are the following:

    a. TENNESSEE STATE ATHLETIC COMMISSION (hereinafter also referred to as "Tennessee State Athletic Commission"), on information and belief a domestic corporation licensed to do business and doing business in this District and at all relevant times the employer of Roxana Gumucio, Katie Long and DOES 1 through DOES 20. As a result, Tennessee State Athletic Commission may be responsible for the actions of all the individual defendants, including Roxana Gumucio, Katie Long and DOES 1 through DOES 20 under the *respondeat superior* doctrine. Tennessee State Athletic Commission further may be responsible for the actions of the individual defendant Jesse Gentry to the extent that he was acting as an agent of and at the directions the Tennessee State Athletic Commission.

    b. ROXANA GUMUCIO (hereinafter also referred to "Gumucio"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and a resident in the Middle District of Tennessee. On belief and information, Roxana Gumucio is a citizen of the United States and

of the State of Tennessee. At all relevant times, Roxana Gumucio was an employee, manager, officer and/or director of Defendant Tennessee State Athletic Commission.

c. KATIE LONG (hereinafter also referred to "Long"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and a resident in the Middle District of Tennessee. On belief and information, Katie Long is a citizen of the United States and of the State of Tennessee. At all relevant times, Long was an employee, manager, officer and/or director of Defendant Tennessee State Athletic Commission.

d. JESSE GENTRY (hereinafter also referred to "Gentry"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and a resident in the Middle District of Tennessee. On belief and information, Jesse Gentry is a citizen of the United States and of the State of Tennessee. At all relevant times, Long was an employee, manager, officer and/or director of Defendant Tennessee State Athletic Commission.

e. EVAN GUBERA (hereinafter also referred to "Gubera"), on information and belief, a person of the full age of majority and a resident of the State of North Carolina and California. On belief and information, Gubera is a citizen of the United States and of the State of California. At all relevant times, Gubera was licensed as boxer by the Tennessee State Athletic Commission.

f. JIMMY ADAMS (hereinafter also referred to "Adams"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and a resident in the Middle District of Tennessee. On belief and

information, Jimmy Adams is a citizen of the United States and of the State of Tennessee. At all relevant times, Adams was a licensee as promoter and/or manager of Tennessee State Athletic Commission or was otherwise subject to commission jurisdiction by his actions.

g. ASHLEY ADAMS (hereinafter also referred to "A.Adams"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and a resident in the Middle District of Tennessee. On belief and information, A.Adams is a citizen of the United States and of the State of Tennessee. At all relevant times, A.Adams was the wife of defendant Jimmy Adams and was the one who came up with the idea of putting Gubera on the Troubador event as a paid bout. On belief and information, the assets of A.Adams and Jimmy Adams are co-mingled and A.Adams is used as vehicle for Adams to evade liability, including liability for the acts complained of herein and in Plaintiff's sister lawsuits against Adams for breach of contract.

h. COUNTRY BOX, LLC (hereinafter also referred to "Country Box"), Tennessee Limited Liability Company having its principal place of business, licensed to do business and doing business in this District, State of Tennessee.

i. JIMMY ADAMS MEDIA, LLC (hereinafter also referred to "Jimmy Adams Media"), a Tennessee Limited Liability Company having its principal place of business, licensed to do business and doing business in this District, State of Tennessee.

j. JIMMY ADAMS PROMOTIONS, LLC (hereinafter also referred to "Jimmy Adams Promotions"), a Tennessee Limited Liability Company having its

principal place of business, licensed to do business and doing business in this District, State of Tennessee.

k.  DON KING PRODUCTIONS, LLC (hereinafter also referred to "DKP"), a Tennessee Company having its principal place of business Florida, and on belief and information may or may not be licensed to do business but is doing business in this District, State of Tennessee. At all times relevant, DKP was a partner and associate of Jimmy Adams and various entities owned and operated by Adams, including Jimmy Adams Entertainment and Jimmy Adams Media.

l.  DON KING (hereinafter also referred to "King"), on information and belief, a person of the full age of majority and a resident of the State of Florida, and doing business in the Middle District of Tennessee. On belief and information, King is a citizen of the United States and of the State of Florida. At all relevant times, King was licensed as promoter in different jurisdiction and may be subject to the jurisdiction of Tennessee State Athletic Commission or was otherwise subject to commission jurisdiction by his actions. At all times relevant, King was a partner and associate of Jimmy Adams and of various entities owned and operated by Adams, including Jimmy Adams Entertainment and Jimmy Adams Media. At all times relevant, King was an owner, officer and director of DKP and of various of the other defendants officially or silently.

m.  FARMERS AND MERCHANTS BANK, also known as Farmers Bank (hereinafter also referred to "Farmers Bank"), a Tennessee bank having its principal place of business, licensed to do business and doing business in this District, State of Tennessee. At all times relevant, Farmers Bank was the bank

servicing Adams and his businesses, including Country Box and on belief and information the other corporate defendants.

n. SHANE CASEY (hereinafter also referred to "Casey"), a person of the full age of majority, and having his principal place of residence in an unknown city in the State of Tennessee. At all times relevant, Casey was an employee of Defendant Farmers Bank and is only sued in his individual capacity for his ultra vires acts.

o. KANE BROWN (hereinafter also referred to "Brown"), on information and belief, a person of the full age of majority and a resident of the State of Tennessee, and doing business in the Middle District of Tennessee. On belief and information, Brown is a citizen of the United States and of the State of Tennessee. At all relevant times, King was licensed as manager in different jurisdiction and may be subject to the jurisdiction of Tennessee State Athletic Commission or was otherwise subject to commission jurisdiction by his actions. At all times relevant, Brown was a partner and associate of Jimmy Adams and invested in various entities owned and operated by Adams. At all times relevant, Brown was an owner, officer and director of KBB and various of the other defendants officially or silently.

p. KB BOXING, INC (hereinafter also referred to "KBB"), a Tennessee Company having its principal place of business this district, and on belief and information may or may not be licensed to do business but is doing business in this District, State of Tennessee. At all times relevant, KBB was a partner and associate of

Jimmy Adams and various entities owned and operated by Adams, including Jimmy Adams Entertainment and Jimmy Adams Media.

q. DOES 1 THROUGH DOES 20. The true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as DOES 1 through DOES 20 are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when the same have been ascertained.

r. ABC INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant Tennessee State Athletic Commission and its employees, and agents, including the individual Defendants (in their capacity as an employee, and/or agent of Tennessee State Athletic Commission), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

s. DEF INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant Roxana Gumucio and her employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of Roxana Gumucio), on information and belief, and at all relevant times provided coverage to cover the damages caused by

Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

t. GHI INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant Katie Long and her employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of Katie Long), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

u. JKL INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant Jesse Gentry and his employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of Jesse Gentry), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

v. MNO INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage

to Defendant Don King, DKP and their employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of King and DKP), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

w. PQR INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant Kane Brown and KBB and their employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of Brown and KBB), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

x. STU INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this district, in the State of Tennessee, and contracted to provide insurance coverage to Defendant First Farmers and Merchants Bank and Casey and their employees, and agents, including the unnamed individual Defendants DOES 1 through DOES 20 (in their capacity as an employee, and/or agent of Jesse Gentry), on information and belief, and at all relevant times provided coverage

to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

y. XYZ INSURANCE COMPANY, on information and belief, a Domestic or foreign insurance company licensed to do business and doing business in this District, State of Tennessee, and contracted to provide insurance coverage to Defendant DOES 1 through DOES 20 and their officers, directors, employees, and agents, including the individual Defendants (in their capacity as an employee, and/or agent of DOES 1 through DOES 20), on information and belief, and at all relevant times provided coverage to cover the damages caused by Defendants in the instant matter, including but not limited to the damages caused by the Defendants to Plaintiff.

## GENERAL ALLEGATIONS

16. On belief and information, at all times relevant Defendant **TENNESSEE STATE ATHLETIC COMMISSION** was an agency of the state of Tennessee and a state actor tasked with the regulation of the sports of boxing in the State of Tennessee.

17. On belief and information, at all times relevant Defendant Roxana Gumucio was and is an employee, manager, officer, and/or director of Defendant Tennessee State Athletic Commission.

18. On belief and information, at all times relevant Defendant Katie Long was and is an employee, manager, officer, and/or director of Defendant Tennessee State Athletic Commission.

19. On belief and information, at all times relevant Defendant Jesse Gentry was and is an attorney, employee, manager, officer, and/or director of Defendant Tennessee State Athletic Commission.

20. On belief and information each of the Defendants named as DOES 1 through DOES 20 was an employee, manager, officer, director and/or associate of defendant Tennessee State Athletic Commission at all times relevant.

21. On belief and information, Defendants, TSAC, Gumucio, Long, Gentry, Adams, A.Adams, Gubera, DKP and King, and DOES 1 THROUGH DOES 20 engaged in unlawful behavior, including but not limited to, making false private and public accusations that Plaintiff Mendy was incompetent, failed to comply with State of Tennessee boxing rules and regulations and warranted having his license taken.

22. On belief and information, this was done to eliminate Mendy as a competitor of DKP, King, A.Adams and Adams.

23. Defendants also made other disparaging remarks about Mendy and conspired to have him stripped of his Tennessee Promoters license that discouraged or would discourage licensing of him by others.

24. At all relevant times, Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, DPK, King, Adams, A.Adams and DOES 1 THROUGH DOES 20, conspired with each other and others to blackball Mendy, disparately apply rules against him and block Mendy from getting other licensing as a promoter in the Boxing industry.

25. On information and belief, Defendants Tennessee State Athletic Commission was the employer of Roxana Gumucio, Katie Long, Jesse Gentry and some of actors named as

part of DOES 1 THROUGH DOES 20 at all relevant times. As a result, Tennessee State Athletic Commission is liable to Plaintiff under the law under a theory of *respondeat superior* for the actions of Roxana Gumucio, Katie Long, and Jesse Gentry and DOES 1 THROUGH DOES 20 made in the course and scope of their licensing with Tennessee State Athletic Commission.

26. On information and belief, Don King Productions was the employer of or the party that directed that actions of Don King, Adams, A.Adams, Roxana Gumucio, Katie Long, Jesse Gentry and some of the actors named as part of DOES 1 THROUGH DOES 20 at all relevant times. As a result, Tennessee State Athletic Commission is liable to Plaintiff under the law under a theory of *respondeat superior* for the actions of Roxana Gumucio, Katie Long, and Jesse Gentry and DOES 1 THROUGH DOES 20 made in the course and scope of their licensing with Tennessee State Athletic Commission.

27. This action arises under the provisions of the Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e-3(a), the Tennessee Human Rights Act, the Tennessee Licensing Discrimination Law, and other laws.

28. The Defendant are indebted unto the Plaintiff for all damages and all other relief allowable under federal law for violation of the provisions of the Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e-3(a) and other federal law as will be established at trial.

29. Additionally, the Defendants also are indebted unto the Plaintiff for all damages and all other relief allowable under state law due to wrongful termination of Plaintiff's promoter rights, discrimination based upon race, and retaliation for the following reasons outlined hereinbelow.

30. Sometime in 2024, Defendant, Tennessee State Athletic Commission at the machinations of the individual defendants, terminated Plaintiff's promoter's license in violation of Tennessee and federal laws.

31. Further, Defendants caused Plaintiff to be charged the excessive penalty of $50,000.00 and forfeited or caused his promoter's bond to be forfeited.

32. The Plaintiff, an African American man, has faced and will continue to face significant challenges in securing other licenses in the Boxing industry following his termination not only because of his wrongful termination but also because of the actions of Defendants after his termination.

33. On information and belief, whenever Defendants are contacted to verify Plaintiff's licensing with Tennessee State Athletic Commission, Defendants would go beyond the scope of routine licensing verification and provide information, whether or not true, that would scuttle Plaintiff's chance at securing the licensing in question.

34. Further, by the excessive penalty they secured against Mendy in default, and the resultant bond exercise, defendants effectively have put plaintiff and his company Lion Heart Boxing Productions to go out of business as no one else will bond them, not just remove them from the Tennessee market.

35. The taking of Plaintiff's license and stripping of his bond have received raised concerns about his prospects in the industry and added to the challenges he faced in promoting boxing events after his termination of license by Tennessee State Athletic Commission.

36. Plaintiff believes that the actions of defendants may have had a broader impact on his existence as a promoter within the Boxing industry, potentially contributing to the

persistent challenges he faces and will continue to face in securing licensing at other jurisdictions.

37. As a result of the actions of Tennessee State Athletic Commission and/or the actions of other defendants in this matter, Plaintiff is entitled to, and should be awarded, lost wages, back pay, and full benefits that would have been accrued but for the removal of license and the forfeiture of bond.

38. Defendant' actions or conduct should warrant reasonable sanctions against them for violating Plaintiff's rights.

39. Plaintiff, Edward Bissau Mendy, will show that his injuries were caused by the conduct of the Defendants in the following non-exclusive respects:

   a. Failure to exercise necessary caution and due care;
   b. Failure to act as a prudent and reasonable regulators.
   c. Failure, generally, to exercise the degree of care commensurate with the factual situation herein described;
   d. Discrimination against a licensee;
   e. Retaliation against a licensee;
   f. Violation of Plaintiff's civil liberties;
   g. Deprivation of vested property rights;
   h. Injury to Reputation;
   i. Mental Anguish;
   j. Humiliation and Embarrassment;
   k. Hostile Environment;
   l. Past, Present, and Future Loss of Wages; and
   m. Defamation

40. The aforesaid Defendants, and each of them, are truly indebted unto Plaintiff, for such damages as are reasonable in the premises, together with legal interest thereon from date of judicial demand until paid, for all costs of this proceeding, and for all general damages and equitable relief in this matter:

41. Plaintiff, Edward Bissau Mendy, itemizes his damages as follows:

   a.      Past, present, and future mental anguish and emotional trauma;

b. Past, present, and future emotional distress;
c. Past, present, and future pain and suffering;
d. Past, present, and future loss of pursuit of happiness;
e. Past, present, and future loss of enjoyment of life;
f. Reinstatement of licensing and licensing rights, privileges, back pay, and future pay;
g. Entitlement to and receipt of damages due to discrimination and retaliation under the circumstances; and
h. Any and all other damages itemized at the trial of this matter and provided by law.

**FIRST CLAIM FOR RELIEF**
(Against Tennessee State Athletic Commission for Licensing Discrimination)
**LICENSING DISCRIMINATION**

42. The allegations of paragraphs 1 through 41 are incorporated herein by reference.

43. At all times relevant, Defendant Tennessee State Athletic Commission was and is a corporation subject to United States Licensing Discrimination laws, including the Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e-3(a), the Tennessee Human Rights Act, La. R.S. 51:2231, et seq., and the Tennessee Licensing Discrimination Law, La. R.S. 23:301et seq.

44. Defendant Tennessee State Athletic Commission through its employees, officers, directors and other agents, including Roxana Gumucio, Katie Long, Jesse Gentry and DOES 1 THROUGH DOES 20, violated various provision of the Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e-3(a), the Tennessee Human Rights Act, La. R.S. 51:2231, et seq., and the Tennessee Licensing Discrimination Law, La. R.S. 23:301et seq.

45. The discriminatory conduct that Plaintiff Mendy complains of include the following:

    a. Systematically and consistently treating plaintiff Mendy disparately as compared to other Adams and promoters.
    b. Not being responsive to his concerns.
    c. Not returning calls or replying to emails.
    d. Wrongfully seeking the termination Plaintiff's licensing with Tennessee State Athletic Commission.

e. Misrepresenting that plaintiff never submitted a hate receipt.

f. Misrepresenting other of plaintiff's actions and omissions.

g. unequal terms and conditions of licensing, and

h. retaliation.

46. Specifically, Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry and DOES 1 THROUGH 20 treated Plaintiff unequally during his licensing with Tennessee State Athletic Commission, did not respond to his inquiries and needs appropriately during his licensed tenure and eventually used a pretext to terminate his license him without sufficient good cause.

47. In part because of Mendy's reputation as one who stands up for himself and also because of the actions of Don King Productions, Don King, Jimmy Adams, while licensed by Tennessee State Athletic Commission, Defendants sought to and did label Mendy a troublemaker, an "unsafe" or "unprofessional" licensee and have communicated various disparaging statements and information about Plaintiff to others including prospective licensors.

48. The acts of Defendants described herein above constitute Licensing discrimination.

49. The acts of Defendants have caused Plaintiff Mendy damages, which the Defendant should be held responsible for.

50. As a direct and proximate result of Defendants' action, Plaintiff has suffered and will suffer substantial monetary damage in a sum not presently susceptible to precise calculation.

51. Plaintiff is informed and believes and, on that ground, alleges that Plaintiff has suffered monetary damages in a sum that may very well exceed $1 million, all of which should be recovered from Defendants.

## SECOND CLAIM FOR RELIEF
(Against Evan Gubera, Jimmy Adams and Ashley Adams for Breach of Contract)
### BREACH OF CONTRACT CLAIM

52. The allegations of paragraphs 1 through 51 are incorporated herein by reference.

53. Plaintiff Mendy entered into an agreement with Evan Gubera to have Plaintiff facilitate a fight for Gubera on Plaintiff's event at the Troubadour.

54. Part of the terms of the contract was that plaintiff would provide a suitable opponent at a reasonable cost to Gubera and that Gubera would be responsible for all costs associated with the fight.

55. Implied in the Agreement is that each party would use their best efforts to negotiate in good faith and reach reasonable agreement on all issues that come up between the parties.

56. Prior to expiration of the agreement, Gubera repudiated and breached his contract with Plaintiff by coming up with a bogus medical insurance claim and filing a complaint with the Tennessee State Athletic Commission against Plaintiff without good cause.

57. Defendants did this despite knowing that Gubera is the party responsible for all costs related to his fight and that any medical costs Gubera incurred, if any, were his to bear.

58. On belief and information, Gubera did this in collusion with the state actors as well as Mendy's competitor, Defendants Don King Productions, Don King, Jimmy Adams and his wife Ashley Adams.

59. Even more disturbing is the fact that the original agreement was made with Gubera, Jimmy Adams and Ashley Adams as parties, with plaintiff only asked to help to implement same.

60. Equally aggravating is the fact that DPK, King and Adams were supposed to be responsible for the cost of the event but left Mendy holding the bag.

61. The Plaintiff reminded Gubera of Gubera's contractual obligations and of the fact Gubera was under a binding and legally enforceable contract with Plaintiff, all to no avail.

62. Gubera proceeded to reject all proposals offered by Plaintiff for resolution of the matter while not making any efforts on Gubera's part to come up with viable alternatives for resolution of the matter, another substantial breach.

63. In fact, the only resolution acceptable to Gubera, as communicated several times to the Plaintiff, was payment of Gubera's medical bills of the disciple of plaintiff event the termination of his licensing.

64. Defendant Gubera and his agents acted as if Plaintiff had not been hired by Gubera to provide him a fight and did nothing other than push the Tennessee State Athletic Commission to force plaintiff to provide Gubera with medical benefits that they knew or should have known Gubera was not entitled.

65. Gubera continued the breach of contract and continued to act with impunity.

66. This impunity caused Gubera, Jimmy Adams and Ashley Adams and their surrogates to continue to malign Plaintiff even through they knew it would impact his licensing with Tennessee State Athletic Commission.

67. DKP, King, Jimmy and Ashley Adams also breached their agreement with plaintiff by not stepping up to indemnify plaintiff against the actions of Gubera or the expenses claimed by Gubera.

68. Further, DKP, King, and Jimmy Adams, as financial partners of Mendy and parties responsible the expenses of the relevant event, should have paid the Gubera medical expenses.

69. Further, DKP, King, and Jimmy Adams, as financial partner responsible the expenses of the relevant event, should have paid for the gate receipts of the event.

70. Also, DKP, King, and Jimmy Adams, as financial partner responsible the expenses of the relevant event, should have paid the fines imposed by the commission.

71. As a result of Defendants' various breaches of action as outlined herein, Plaintiff is entitled to damages, including not only the actual out-of-pocket money expended by Plaintiff but also all consequential damages incurred because of the consequence of Gubera's actions as well as the actions of DKP, King, Adams and Ashley Adams.

72. Defendants also are responsible for all damages for their breach of the Contract, a sum that is currently unascertainable but on belief and information is in excess of $1,000,000.00.

73. Plaintiff has done everything required of him by each of the agreements he has with defendants and is in no manner or respect in breach thereof.

74. Despite repeated demand by Plaintiff, Gubera  has refused to fulfill Gubera's contractual obligations to Plaintiff.

75. Also, the Adams defendants have failed to meet their obligations to plaintiff.

76. Further, DKP and King have refused to meet their obligations to Mendy

77. Defendants did this knowing fully well that failure to act in good faith and to honor their agreement would be a bad faith breach of contract.

78. Plaintiff used up a considerable amount of their time and resources to pursue resolution of the Contract issues.

79. Plaintiff has incurred expenses pursuant to the Contracts with defendants and the opportunity it purported offered him, which damages Defendants should be responsible for.

80. As a direct and proximate result of the breach and repudiation of the Agreement, Plaintiff has suffered and will suffer substantial monetary damage in a sum not presently susceptible to precise calculation.

81. Plaintiff is entitled to monetary damages, compensatory and other damages caused by defendants' actions.

82. Plaintiff have suffered monetary damages in a sum that may very well exceed $1 million, all of which should be recovered in the event specific performance is not granted.

### THIRD CLAIM FOR RELIEF
(Against All Defendants for Breach of Duty)
**<u>BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING</u>**

83. Mendy adopts, alleges and affirms all allegations and averments contained in the above and foregoing paragraphs of this Complaint.

84. Tennessee State Athletic Commission, Gumucio, Long and Gentry, and each of them, owed and owes a duty of good faith and fair dealing to Mendy pursuant to their regulatory and regulatory business relationship with Mendy.

85. Gubera, DKP, Don King, Jimmy Adams and Ashley Adams, and each of them, owed and owes a duty of good faith and fair dealing to Mendy pursuant to their contractual and business relationship with Mendy.

86. The duty of good faith and fair dealing is implied in every contract, including the licensing relationship that Mendy had with the defendants.

87. The duty of good faith and fair dealing is also required by Tennessee law and Louisiana law, the location of Mendy when most of the conversations and negotiations Mendy had with defendants took place.

88. Defendants breached their duty of loyalty, duty of good faith and duty of fair dealing by their actions as described above.

89. As a result of the conduct of Defendants in breaching their duties of loyalty, good faith and fair dealing, Plaintiff Mendy has suffered and continues to suffer general, special, actual and compensatory damages, in an amount to be proven at trial for all of which defendants are liable.

## FOURTH CLAIM FOR RELIEF
### (Against all defendants Libel and Slander)
### LIBEL AND SLANDER

90. Plaintiff realleges and incorporates by reference Paragraphs 1 through 89, inclusive, as though set forth at length and Plaintiff specifically hereby incorporates by reference all of the paragraphs of the General Allegations as though fully set forth herein.

91. Plaintiff is informed and believes, and thereon alleges that during and at all times relevant herein, Defendants Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, Evan Gubera, Jimmy Adams, Ashley Adams, DKP, King and DOES 1 through DOES 20, and each of them, uttered and published false and defamatory statements concerning Plaintiff, which were reasonably understood by those who were hearing same as referring to Plaintiff.

92. Among other things, Defendants Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, Evan Gubera, Jimmy Adams, Ashley Adams, DKP, King, and DOES 1 through DOES 20, and other associates and agents of Defendants, falsely represented that Plaintiff do meet the TSAC's requirements for the February 6, 2023 event, Mendy did not submit a gate receipt form within 90 days, Mendy did not provide insurance for the event, Mendy was supposed to provide Gubera with insurance, Mendy's failure to provide insurance was sufficient ground to take away his license, Mendy's actions were systematic enough to warrant him being barred from promotions in the State of Tennessee.

93. On belief and information, Defendants also represent that Plaintiff rightfully and deservedly has his license revoked and fined $50,000.00 by the Tennessee State Athletic Commission.

94. Defendants falsely represented Mendy could not be trusted as a licensee.

95. Among the many defamatory statement made by Tennessee State Athletic Commission, Roxana Gumucio, Long, Gentry, Adams, A.Adams, Gubera, DKP, King, and DOES 1 through DOES 20, and other associates and agents of Tennessee State Athletic Commission, include but are not limited to the following:

    a.      Mendy is not a good promoter.
    b.      Mendy is not worthy of trust.
    c.      Mendy's license was rightfully terminated for good cause.
    d.      Mendy's fine of $50,000.00 was appropriate and/or proportionate.
    e.      Mendy failed to submit an event gate receipt form.
    f.      Mendy failed to provide event insurance.
    g.      Mendy was required by law to provide Evan Gubera with insurance.
    h.      Mendy's refusal to provide Evan Gubera insurance coverage was an issue under the purview of the commission.
    i.      Mendy's failure to provide insurance was cause for revocation of his license.
    j.      Mendy's failure to provide a gate receipt was cause for deviation of his license.
    k.      Mendy's failure to provide a gate receipt was cause for a $50,000.00 fine.

24

l.      Mendy bounced a check to the commission.

m.     Mendy failed to pay sums owed to the commission.

n.      Mendy's statements about his license and his Tennessee events were "lies."

o.      Mendy has no good claim to against the Tennessee State Athletic Commission.

96. Defendants also made other defamatory remarks that will more fully be proven at trial of this matter.

97. The above statements were made by Defendants Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, Evan Gubera, Jimmy Adams, Ashley Adams, DKP, King, and DOES 1 through DOES 20, and other associates and agents of Defendants via email, at Tennessee State Athletic Commission meetings and hearing as well as by other means, and to members of the public.

98. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by Defendants Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, Evan Gubera, Jimmy Adams, Ashley Adams, and DOES 1 through DOES 20, and other associates and agents of Defendants to Corey William, Matt Brown, various fights and other people that they knew Plaintiff would have dealings with.

99. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants Tennessee State Athletic Commission, Roxana Gumucio, Katie Long, Jesse Gentry, Evan Gubera, Jimmy Adams, Ashley Adams, DKP, Don King, their associates, agents and employees and DOES 1 through DOES 20 verbally.

100.     Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants in writing, including to

potential licensors of Plaintiff who requested licensing verification or who had Defendants' audience and whenever Mendy's name was brought up.

101.  Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants with the intent of conveying the false and defamatory idea that Plaintiff was lying about his licensing, competence, relationship with defendants as well as the cause of his fine and license revocation.

102.  Further, the false and defamatory statements were made by the Defendants with the intent of conveying the false and defamatory idea that Plaintiff was lying when he stated that he submitted a gate receipt, was not required to provide medical insurance for Gubera on account of his arrangement with Gubera and that he was not supposed to pay the $500.00 gate receipt due as some was the obligation of Jimmy Adams and should be paid by him or that Adams should be punished for it and not plaintiff.

103.  Further, the false and defamatory statements were made by the Defendants with the intent of conveying the false and defamatory idea that Plaintiff was lying when he stated that he was fined and had his license revoked without good cause.

104.  The words that were uttered by Defendants were slanderous *per se* because they made various false statements regarding Plaintiff's reputation, and by innuendo by impliedly accused Plaintiff of lying, of illegally and improperly holding an event with providing requisite fighter insurance to Gubera, refusing to follow direct orders of the commission (to file a gate receipt form, to pay the gate receipt and to provide insurance claim information to a fighter in Gubera), and/or of otherwise illegally perpetuating a fraud on Gubera and the Tennessee State Athletic Commission.

105.    On belief and information, the Libel and Slander Defendants have had and continue to have conversations with others and are continuously engaged in their defamatory scheme in part as an extension of a smear campaign initiated by the Defendants at the direction of Jimmy Adams and Evan Gubera.

106.    The words were understood by Defendants to those who heard them in a way which defamed Plaintiff Mendy because the words were intended to slander Plaintiff's reputation in an attempt to make public to believe that Plaintiff was not only lying about the events, his relationship with both Gubera and Jimmy Adams, but also plaintiff was engaged in unsafe, incompetent and other improper licensing acts by his actions.

107.    As a direct proximate result of the above-described words, Plaintiff has suffered damages.

108.    Specifically, Plaintiff has suffered loss of his reputation, shame, mortification, emotional distress, and injury to his feelings, while suffering and continuing to suffer general and special damages as set forth herein.

109.    As a direct proximate result of the above-described words, Plaintiff Mendy has suffered the other damages, including general damages, which will all be identified at trial as set forth herein.

110.    The words described above were spoken by Libel and Slander Defendants because of their selfish ends, and on belief because of their feelings of hatred and ill will toward the Plaintiff, as well as a desire to oppress and silence Plaintiff, and thus entitling Plaintiff to an award of exemplary and punitive damages in an amount according to law.

111. As a result of their actions and defamation of Plaintiff, Defendants have caused Plaintiff to suffer substantial damages as set forth herein.

112. As a result of the conduct alleged herein, Plaintiff has suffered damages in an amount to be proven at trial but on information and belief well over One Million Dollars ($1,000,000.00), for which defendants are liable, jointly and/or severally.

### FIFTH CLAIM FOR RELIEF
(Against DPK, King, Jimmy Adams, Ashley Adams and DOES 1 through DOES 20)
### INDUCING BREACH OF CONTRACT

113. Plaintiff realleges and incorporates the breach of contract allegations, Paragraphs 1 through 112, as though set forth herein at length.

114. The Contract was a valid and existing contract between Tennessee State Athletic Commission and Plaintiff.

115. Mendy is informed and believes, and on that basis alleges, that Defendants under this cause of action had knowledge or should have had knowledge of Mendy's agreement with Evan Gubera and yet still proceeded to induce a breach of the fight contract by Gubera and/or otherwise disrupted same through improper means.

116. As a result of Defendants' conduct, Plaintiff Mendy has suffered general, special, actual and compensatory damages, in an amount to be proven at trial for all of which said Defendants are liable.

117. As a direct result of the actions of Defendants, the contractual relationship between Gubera and Plaintiff has been disrupted.

118. Plaintiff has suffered actual and potential damages in an amount as yet unknown but which Plaintiff believes to be in excess of $1,000,000.00. Plaintiff shall amend his complaint to set forth the right amount of damages when ascertained.

119. The acts by Defendants were willful, wanton, malicious, and oppressive, and were undertaken with the intent to injure Mendy, and for the profit and gain of Defendants.

120. Such conduct therefore justifies an award of exemplary and punitive damages to the full extent permitted by Tennessee Law and in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
(Against All Defendants)
**INTERFERENCE WITH BUSINESS RELATIONS**

121. Plaintiff adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint, especially the allegations contained in paragraphs 1 through 120.

122. By the conduct described herein and above, Defendants have intentionally, maliciously and wantonly interfered with the existing and prospective business relations of Plaintiff Mendy.

123. Specifically, Defendants caused Plaintiff Mendy to lose licensing opportunities with other employers in the Boxing industry.

124. As a result of Defendants' conduct, Mendy has suffered and continue to suffer general, special, actual and compensatory damages, in an amount to be proven at trial and for all of which Defendants are liable.

125. Plaintiff has an advantageous business relationship with as well as prospective advantageous relationship with others in his industry.

126. Defendants were aware of the advantageous business relationships and other advantageous prospective relationships that Plaintiff has but, despite this knowledge, engaged in the conduct alleged herein.

127. Defendants undertook the alleged conduct for improper purposes, including but not limited to, suppressing Plaintiff and inflicting an economic injury on Plaintiff.

128. As a result of the conduct alleged herein; Plaintiff has suffered damages in an amount to be proven at trial.

129. The conduct of Defendants as alleged herein was undertaken in bad faith, was malicious and manifested wanton disregard of and reckless indifference towards the rights of Plaintiff, thereby entitling Plaintiff to punitive or exemplary damages.

130. Such conduct therefore justifies an award of exemplary and punitive damages to the full extent permitted by Tennessee Law and in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
(The named Defendants)
### INTENTIONAL INTERFERENCE WITH CONTRACT

131. Mendy adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

132. By the conduct described herein and above, Defendants intentionally, maliciously, recklessly and/or wantonly interfered with the Plaintiff's Contract as described above.

133. As a result of Defendants' conduct, Mendy has suffered and continue to suffer general, special, actual and compensatory damages, for all of which Defendants are liable.

134. Such conduct therefore justifies an award of exemplary and punitive damages to the full extent permitted by Tennessee Law and in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
(Against All Defendants)
### FRAUD

135. Plaintiff hereby incorporate by reference all paragraphs of the General Allegations,

and all of the prior allegations as though fully set forth herein.

136.   For example, Louisiana Civil Code Article 1953 defines "fraud" as follows:

    Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.

La. C.C. art. 1953.

137.   The actions of Defendants in this matter, particularly the actions of Adams, A.Adams, DPK, King, Brown, KBB, Casey and First Farmers and Merchants Bank, and their associates constitutes fraud.  Defendants engaged a pattern and practice of deception that started on or immediately after the parties' agreement to do business and is continuing to this day. On belief and information, the deception may even have been premeditated before the execution of the Agreement.

138.   Defendants intentionally and willfully decided undertook to defraud the Plaintiff of his funds as well as his share of CountyBox, LLC (the Company), his funds and his interest in various boxers.  Specifically, defendants have caused Mendy to spend his money and assume liabilities of the Company using false pretext and false pretenses.

139.   Further, Defendants have represented that the expected proceeds from the JV are nominal and refused access to Company's books and finances as well as prevent Mendy from being able to ascertain the true financial condition of the Company and the defendants' gains form their fraud and other acts.

140.   This pattern of fraud continued to date. On belief and information, Defendants have entered into agreements with others regarding ownership and funding of the series and the Company as well as with regards to boxer without the consent of Plaintiff or without regard to Mendy's rights.

141.   On information and belief, Defendants intentionally lied to Plaintiff regarding

their intentions and ability to ensure that all checks written on the Company account would be honored. To this day, Defendants have failed to come clean about the true reasons behind the bouncing of so many checks. Instead, Defendants, especially A.Adams and Adams, blame the lack of funding on Mendy suggesting that Mendy's failures to deliver Vladimir Sirenko to a management agreement with Kane Brown or a promotion contract with Don King were the cause of Adams' inability to get funds.

142. On information and belief, Defendants intentionally lied and continue to lie to Plaintiff and others regarding the funding of the February Event, all in effort to get him to fund the event and otherwise defraud Plaintiff.

143. In committing the acts herein alleged, the Defendants, and each of them committed fraud on Plaintiff and/or conspired to commit fraud, did so negligently, carelessly, and fraudulently, and should have known that Defendants by their actions were seeking to defraud Plaintiff.

144. The misrepresentations made to Plaintiff by Defendants and other Defendants' actions constitute a fraud under Tennessee and Louisiana law.

145. As a direct and proximate result of Defendants acts, and each of their conduct alleged above, Plaintiff has suffered, and continue to suffer general and special damages in an amount to be determined according to proof at time of trial, which Plaintiff is informed and believe and thereon allege is in excess of the sum of $100,000.00.

146. As a further direct and proximate result of Defendants, and each of their conduct alleged above, Plaintiff were required to expend their time and energy to gather facts, seeking and conferring with legal counsel, and filing a legal action to redress said

Defendants' tortuous conduct, all to Plaintiff' detriment in a sum to be proved at the time of trial.

147.     As a direct and proximate result of the conduct of Defendants, Plaintiff may be required to retain additional legal counsel and incur legal costs and reasonable attorney's fees, all to Plaintiff's detriment in a sum to be proved at the time of trial.

148.     As a proximate result of the negligence of Defendants, and the Defendants' defrauding of Plaintiff, Plaintiff suffered loss of their reputation, shame, mortification, emotional distress, and injury to their feelings, in a sum according to proof at the time of trial.

149.     In doing the acts herein alleged, Defendants acted with fraud, malice, and oppression, entitling Plaintiff to consequential damages, foreseeable or not, and other damages as may established at trial in an amount according to law.

### NINETH CLAIM FOR RELIEF
(Against A.Adams, Adams and DOES 1 through DOES 20)
### BREACH OF CONTRACT

150.     The allegations of Paragraphs 1 through 65 especially the allegations of the Background Allegations and General Allegations, are incorporated herein by reference as if same were fully pleaded herein.

151.     Plaintiff approached Adams for help with his fighters.  Adams was supposed to either have the fighters signed to a management agreement with Kane Brown or a copromotion agreement with Don King.

152.     To move the target fighters, Mendy proposed doing fights in Nashville with Kane Brown providing the funding to move joint fighters.

153.     To motivate Adams, Mendy offered to give him or his wife a 50% interest in the

profits of the promotions. Mendy's primary interest was just getting a vehicle for moving his fighters.

154. When Kane Brown could not be made to commit to the promotions, Adams said he personally had money and could fund the series.

155. As a result of Adam's representations, the parties entered into a JV agreement. Initially Adam's wife was supposed to serve as CEO and Mendy to serve as CFO of Country Box, LLC.

156. Due to various factors (on belief not essential to this lawsuit), Adams' wife was unable or unwilling to serve as CEO of Country Box, LLC. Despite this, Mendy decided to soldier on.

157. Initially, Adams was supposed to be a silent partner and to help with the music part of the business of the Company. With the passage of time, however, he became more and more involved in the operations.

158. Mendy welcomed Adams' participation as the two of them worked very well together.

159. However, from the onset of his involvement is seems that a lot of Adams' actions were geared towards getting himself and his team members to learn as much as possible from Mendy and/or to position things for his eventual replacement. With each passing moment, Adams progressively put himself up front.

160. The CountryBox concept was developed jointly, including format, look, feel and intellectual property. Any claim to the contrary is false, made up or a reconstruction of facts.

161. Part of the terms of the Agreement between the Defendants and the Plaintiff is the

provision that the parties would operate the Company jointly.

162.    Further, it was understood and agreed that Adam would be responsible for the capitalization and expenses of the Company.

163.    Adams has breached his Agreement not only by failing to pay for expenses but also by repudiating Mendy's ownership and proceeding with promoting CountryBox as his own.

164.    The actions of Defendants as well as their inactions, constitute a breach of their Agreement with Plaintiff as well as a violation of both federal and state law as will be shown at trial of this matter.

165.    The breach of contract has caused Plaintiff damages as a direct result of the breach, which on information and belief is well in excess of $100,000.00.

166.    The breach is a proximate cause of the damages incurred by Plaintiff.

167.    As a result of the breach of their agreement, Defendants are indebted unto Plaintiff for an unspecified amount which has not yet been ascertained, an amount sufficient to compensate Plaintiff for all damages incurred as a result of the breach of contract. Total damages will be established at trial of this matter.

168.    As a result of their breach of their contract, Defendants are indebted unto Plaintiff for court costs, expense of litigation and attorney's fees as may be established at trial of this matter.

### TENTH CLAIM FOR RELIEF
(Against A.Adams, Adams, DKP, King, Brown, KBB, and DOES 1 through DOES 20)
### INTERFERENCE WITH BOXER CONTRACTS and BUSINESS RELATIONS

169.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

170. The Defendants, including Don King, his company DKP, Kane Brown and his boxing management company KBB, A.Adams and Jimmy Adams, and each of them, have interfered with Mendy's contract with his boxers and others.

171. The unnamed defendants further have interfered with Mendy's contract and relationship with Gubera.

172. King and DPK specifically interfered with Mendy's contract with Christopher Lovejoy.

173. The interference has caused Mendy damages.

174. As a direct and proximate result of the Defendants interference, Plaintiff has sustained significant damages. As a result of the misconduct alleged herein, the Defendants and their agents are liable to Plaintiff.

175. Defendants and their agents, and each of them, are indebted unto Plaintiff's for their interference, in a sum currently unascertainable.

176. Neither the whole nor part of this sum has been paid, although demand therefore has been made before the filing of this Complaint and by this Complaint.

177. Defendants and each of them is responsible for the actions of its agents under the doctrine of *respondeat superior*, and is therefore indebted to Plaintiff for breach of the agents' fiduciary duties, breach of their duty of good faith and breach of their duty of fair dealing, in a sum currently unascertainable.

178. Neither the whole nor part of this sum has been paid, although demand therefore has been made before the filing of this Complaint and by this Complaint.

179. Consequently, there is now due and owing, and unpaid a sum in an amount not yet ascertained, with interest judicial interest thereon as set by law.

180.    As a result of Defendants' breach of their duties, Defendants are indebted unto
Plaintiff for court costs, expense of litigation and attorney's fees as may be established
at trial of this matter.

### ELEVENTH CLAIM FOR RELIEF
(Against Gubera, A.Adams, Adams, DKP, King and DOES 1 through DOES 20)
<u>ACCOUNTING</u>

181.    The allegation of paragraphs 1 through 180 are incorporated herein by reference
and repleaded herein.

182.    Despite repeated demand from Plaintiff, Defendants have refused to provide
Plaintiff with an accounting of the revenues and assets of Country Box.

183.    Without access to Country Box, LLC 's record, Plaintiff is unable to account for
the Company's revenues and the sums due to Plaintiff.

184.    Additionally, Defendants have failed to account for revenues generated and
expenses incurred and paid by Country Box.

185.    Accounting is needed to reconcile the accounts of Defendants and ensure that none
one of them is unjustly enriched at the expense of Plaintiff.

186.    Not one of the defendants has yet to be forthcoming on Plaintiff's request for total
accounting of the payments received owed to Plaintiff.

187.    Despite repeated requests, Defendants have refused to provide Plaintiff with the
requisite information or otherwise give plaintiff access to the company's records to
facilitate better management of the company's finances or to otherwise account for and
pay sums owed to Plaintiff.  Thus, an accounting is reasonable herein.

188.    Thus, Plaintiff is entitled to and hereby demand an accounting of the revenues,
expenses and profits, if any, of Country Box, LLC as well as any sums the plaintiff

may be entitled.

## TWELFTH CLAIM FOR RELIEF
### (Against All Defendant)
**<u>UNJUST ENRICHMENT</u>**

189. Plaintiff hereby incorporates by reference all of the paragraphs of the General Allegations, and the allegations of the prior Causes of Action as though fully set forth herein.

190. Defendants, and each of them, are indebted to Plaintiff for funds in their custody and held by them on behalf of Plaintiff and for which defendants are not entitled but have failed to pay Plaintiff, in a sum currently unascertainable for value had and received by Defendants.

191. Plaintiff is impoverished by the assets and company revenues and profits that Defendants withheld from Plaintiff and to which Plaintiff is entitled. Further, plaintiff is impoverished by the television rights given to iTube247 without compensation. On belief and information, the amount that the Plaintiff is impoverished may exceed $50,000.00.

192. Defendants are enriched by the amounts that the Plaintiff is impoverished.

193. Neither the whole nor part of this sum has been paid, although demand therefore has been made before the filing of this Complaint and by this Complaint.

194. The enrichment of Defendants at the expense of Plaintiff is unjust as such enrichment is to the detriment of Plaintiff and without any just cause.

195. Consequently, there is now due and owing, and unpaid, a sum in an amount not yet ascertained, with interest judicial interest thereon as set by law.

## THIRTEENTH CLAIM FOR RELIEF
### (Against Gubera, A.Adams, Adams, King, DKP, KBB, Brown, Farmers and Casey)
### JUSTIFIABLE RELIANCE (Promissory Estoppel)

196.    The allegations of Paragraphs 1 through 195, particularly the allegations of the Breach of Contract claim, are incorporated herein by references as if same were fully repleaded herein.

197.    This Justifiable Reliance claim is only advanced as an alternative to the breach of contract claim only.

198.    Defendants represented to Plaintiff that he would secure a deal with Mendy's fighters with Don King and Kane Brown, and or their companies.

199.    Further, Adams represented that he and Mendy would be equal partners of Country Box, LLC, and that Adams would make all payment timely and when due.

200.    Defendants also represented that the checks written by Mendy would be covered.

201.    Plaintiff relied on Defendants' representation.

202.    Plaintiff relied on Defendants' representation to their detriment.  Specifically, Plaintiff, in reliance on Defendant Adams' representations, Mendy incurred over $38,000.00 in expenses.

203.    Plaintiff's reliance on Defendants' promises was all to no avail as defendants have failed to honor their promises.

204.    On belief and information, Defendants, particularly Jimmy Adams, have no intention of honoring Defendants' promises to Plaintiff.  Instead, Defendants were intent on misleading Plaintiff, on belief and information, in hopes of having him help get the series started and then ditching him at some point.

205.    Further, Defendants Adams and Casey had no intention of covering the checks at

issue or of paying Mendy for his other expenses.

206. Plaintiff's reliance on Defendants' promises has caused Plaintiff damages.

207. Defendants' breach of promise is a proximate cause of the damages suffered by Plaintiff in reliance on Defendants' promises.

208. It was reasonable for Plaintiff to rely on Defendants' promises. The promises were made in conjunction with a joint venture and by a longtime associate (Adams) who was desperate for help and bent on doing something mutual and by the manager of a bank.

209. As a result, Plaintiff's belief in and reliance on Defendants' promises was reasonable and justifiable.

210. The damages were caused by Defendants' promises and the Plaintiff justifiable reliance on same. These damages are similar to the breach of contract damages outlined hereinabove.

211. The value of the damages caused by Defendants' promises and Plaintiff justifiable reliance on same is yet unascertainable, but will be established at a trial of this matter or as the court may find appropriate.

212. As a result of Defendants' promise and Plaintiff's justifiable reliance on same, Defendants are indebted unto Plaintiff for an unspecified amount which has not yet been ascertain, an amount sufficient to make Plaintiff whole for all losses suffered as a result of their reliance on Defendants' promises, as well as any other damages as may be established at trial of this matter.

213. Defendants are also liable and indebted to Plaintiff for reasonable attorney' fees, court costs and other reasonable expenses of litigation.

## FOURTEENTH CLAIM FOR RELIEF
### (Against Gubera, A.Adams, Adams and DOES 1 through DOES 20)
### WRIT OF MANDAMUS

214. Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

215. Plaintiff is entitled to and desires a writ of mandamus to compel Defendants, Jimmy Adams and Country Box, to do the following:

    a. Issue certificates evidencing all outstanding ownership interest of the Company;

    b. Provide Plaintiff with a copy of all financial records of the Company through the appointment of a Temporary Liquidator or a Judicial Liquidator, including but not limited to wage reports, income statements, balance sheets, trial balances, receivables aging and payables aging.

    c. Provide Plaintiff with a copy of all corporate records of the Company through the appointment of a Temporary Liquidator or a Judicial Liquidator.

    d. Provide Plaintiff with a copy of all cost reports of the Company from inception through the appointment of a Temporary Liquidator or a Judicial Liquidator.

    e. Provide Plaintiff with a copy of all contracts entered into by the company from inception through the appointment of Temporary Liquidator or a Judicial Liquidator, including but not limited to all employment contracts, leases and other contracts.

    f. Provide Plaintiff with a copy of all audits or regulatory reviews of the company from inception through the appointment of a Temporary Liquidator or a Judicial Liquidator.

    g. Recognize the right of Plaintiff to his shares and interests in Country Box, LLC pending further order of this court.

    h. Recognize Plaintiff's rights as a member of Country Box, LLC under the law.

    i. Recognize the right of Plaintiff to serve as or appoint directors of Country Box, LLC

    j. File any outstanding annual tax report for the company.

    k. Enjoin the transfer of any interest in Country Box, LLC to anyone other than Adam's wife and/or children.

    l. Enjoin Adams from promoting any other boxing events without Mendy's participation.

    m. Remove all directors appointed by Adams pending further order of this court.

    n. Perform other acts as required by this court.

216.     Plaintiff is entitled to a writ of mandamus or injunctive relief to accomplish the
above. The issuance of mandamus writ directing a public officer or a corporation or a
corporate officer to perform any of the duties us allows by law, such Louisiana Code
of Civil Procedure Articles 3863 and 3864. Louisiana Las may apply as Mendy was in
Louisiana when several of the calls he had with Adams took place.

217.     The "duties" above can be subject to a writ of mandamus.

218.     A writ of mandamus may be directed to a corporation or an officer thereof to
compel the holding of an election or the performance of other duties required by the
corporate charter or bylaws or prescribed by law, or for the recognition of the rights of
the members or shareholders.

219.     The duties Plaintiff seek to have the court issue a writ of mandamus on are
"ministerial," not "discretionary" duties.  As a result, these duties are subject to a writ
of mandamus.

220.     All the duties Plaintiff seek to enforce are required by the articles of incorporation,
the bylaws of the company and/or law.

221.     Granting mandamus to uphold a member's right to examine the books and records
of the LLC, require the LLC to issue a membership certificate stock, uphold a
shareholder's right to statutorily require financial information, comply with the articles
of the LLC's organization or other requirements of law, and receive a copy of the
corporation's annual report as requested herein is within the discretion of this court.

222.     Plaintiff may seek a Temporary Restraining Order or Preliminary Injunction at a
later date by motion as is necessary to ensure that the brand is not destroyed by
additional poorly matched fights and that Adams does not sell the Company, part or all

to Don King and/or others.

## FIFTEETH CLAIM FOR RELIEF
### (Against all Defendants)
### CIVIL CONSPIRACY

223.    Mendy adopts, alleges and affirms all allegations and averments contained in the

above and forgoing paragraphs of this Complaint.

224.    Defendants and their associates conspired and continue to conspire with each other

and others against Mendy as alleged herein and above including, but not limited to the

following:

    a.  Inducing Breach of Contract
    b.  Interfering with Business Relations
    c.  Interfering with Contractual Relations
    d.  Depriving Mendy of his contractual rights
    e.  Committing libel and slander and otherwise defaming Mendy
    f.  Committing unfair trade and business practices violation
    g.  Breaching their duties of good faith and fair dealing,
    h.  Wrongfully terminating Mendy's license,
    i.  Wrongfully fining Mendy, and
    j.  Otherwise interfering with Mendy's business and contractual relations.

225.    As a result of Defendants' conduct, Mendy suffered and continue to suffer general,

special, actual and compensatory damages, in an amount to be proven at trial for all of

which Defendants are jointly and severally liable.

226.    The action of each conspirator should be imputed to the other, and each and every

one of them.

## SIXTEENTH CLAIM FOR RELIEF
### (Against All Defendants)
### NEGLIGENCE

227.    Plaintiff hereby incorporates by reference all paragraphs of the General Allegations,

and the allegations of all prior Causes of Action, as though fully set forth herein.

228. Negligence Defendants herein, and each of them, had a duty of due care to Mendy, as set forth herein above.

229. Specifically, Negligence Defendants herein have encouraged Tennessee State Athletic Commission to fine and sanction Mendy.

230. On belief and information, the Defendants also have been negligent in their handling of various licensing verification on Plaintiff in violation of both federal and Tennessee law on same.

231. On belief and information, the Defendants also have been negligent in their handling of their dealing with Plaintiff in violation of both federal and Tennessee law on same.

232. In committing the acts herein alleged, the aforesaid Defendants, and each of them did so negligently, carelessly, and/or recklessly perform their duties, and should have known that of the damages it would cause Plaintiff.

233. Defendants also undertook their actions knowing that the said action would have adverse effect on plaintiff.

234. As a direct and proximate result of Negligence Defendants acts, and each of their conduct alleged above, Plaintiff has suffered and continue to suffer general and special damages in an amount to be determined according to proof at time of trial, which Plaintiff is informed and believe and thereon allege is in excess of the sum of $100,000.00.

235. As a further direct and proximate result of Defendants, and each of their conduct alleged above, Plaintiff was required to expend their time and energy to gather facts, seeking and conferring with legal counsel, and filing a legal action to redress said

Defendants' Negligence conduct, all to Plaintiff' detriment in a sum to be proved at the time of trial.

236.  As a direct and proximate result of the conduct of Defendants, Plaintiff is required to retain legal counsel and incur legal costs and reasonable attorneys' fees, all to Plaintiff's detriment, in a sum to be proved at the time of trial.

237.  As a proximate result of the negligence of Defendants, and the Defendants' defamation of Plaintiff, Plaintiff Mendy suffered loss of his reputation, shame, mortification, emotional distress, and injury to his feelings, in a sum according to proof at the time of trial.

238.  In doing the acts herein alleged, Defendants acted with fraud, malice, and oppression, entitling Plaintiff to punitive damages in an amount according to law.

## SEVENTEENTH CLAIM FOR RELIEF
### (Against all Defendants)
### TORTIOUS CONDUCT

239.  Plaintiff hereby incorporates by reference all paragraphs of the General Allegations, and the allegations of all prior Causes of Action, especially the Negligence Cause of Action allegations as though fully set forth herein.

240.  Defendants herein, and each of them, had a duty of due care to Mendy, as set forth herein above.

241.  In committing the acts herein alleged, the aforesaid Defendants, and each of them did so negligently, carelessly, and/or recklessly perform their duties as outlined hereinabove.

242.  Defendants' actions hereinabove constitute tortious conduct in violation of Tennessee law.

243. As a direct and proximate result of Defendants' acts, Tortious Conduct and each of their conduct alleged above, Plaintiff has suffered and continue to suffer general and special damages in an amount to be determined according to proof at time of trial, which Plaintiff is informed and believe and thereon allege is in excess of the sum of $100,000.00.

244. As a further direct and proximate result of Defendants, and each of their conduct alleged above, Plaintiff is required to expend his time and energy to gather facts, seeking and conferring with legal counsel, and filing a legal action to redress said Defendants' tortuous conduct, all to Plaintiff's detriment in a sum to be proved at the time of trial.

245. As a direct and proximate result of the conduct of Defendants, Plaintiff may be required to retain legal counsel and incur legal costs and reasonable attorneys' fees, all to Plaintiff's detriment, in a sum to be proved at the time of trial.

246. As a proximate result of the tortious conduct of Defendants, Plaintiff Mendy suffered loss of his reputation, shame, mortification, emotional distress, and injury to his feelings, in a sum according to proof at the time of trial.

247. In doing the acts herein alleged, Defendants acted with fraud, malice, and oppression, entitling Plaintiff to punitive damages in an amount according to law.

**EIGHTEENTH CLAIM FOR RELIEF**
(Against Gubera, A.Adams, Adams and DOES 1 through DOES 20)
**<u>UNFAIR BUSINESS PRACTICES</u>**

248. Plaintiff adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint, especially the allegations contained in paragraphs 1 through 126, as if fully restated herein.

249. Defendants committed unfair competition and deceptive trade practices in violation of Tennessee Law which proximately caused harm and damage to Plaintiff.

250. As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

251. Defendants' conduct was undertaken in bad faith, was malicious and manifested a wanton disregard of and reckless indifference toward the rights of Plaintiff thereby entitling Plaintiff to punitive or exemplary damages.

252. The wrongful conduct by the Defendants and their associates alleged above constitutes unfair business practices in violation of Plaintiff ' rights under Tennessee Law.

253. By the conduct described herein and above, Defendants have intentionally maliciously and wantonly caused Plaintiff damages.

254. By the conduct described herein and above, Defendants have intentionally maliciously and wantonly committed unfair trade and business practices.

255. By the conduct described herein and above, Unfair Business Practices Defendants have intentionally maliciously and wantonly interfered with the contract and business relations of Plaintiff and effectively rendered Plaintiff not licensable.

256. Defendants' actions has caused Plaintiff harm and caused him to incur damages.

257. Plaintiff is entitled to all relief, including monetary relief against Defendants, as may be authorized by law and awarded by the court.

### NINETEENTH CLAIM FOR RELIEF
(Against All Defendants)
### PUNITIVE DAMAGES

258. Plaintiff adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

259. Defendants' conduct was intentional, grossly negligent, reckless, willful, and wanton malicious oppressive, and/or unmindful of their obligations to Mendy and/or exhibited that entire want of care which would raise the presumption of conscious indifference to consequences so as to warrant the imposition of punitive and/or liquidated damages in an amount sufficient to punish, penalize, and/or deter Defendants, for which Defendants are jointly and severally liable.

260. Defendants acted capriciously and with wanton disregard for Plaintiff's rights.

261. As a result, Plaintiff is entitled to punitive damages to the full extent provided by Tennessee Law and Louisiana law to the extent it is applicable.

### TWENTIETH CLAIM FOR RELIEF
(Against All Defendants)
### EXPENSES OF LITIGATION AND ATTORNEYS' FEES

262. Plaintiff adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

263. Evan Gubera breached the terms of his contract with plaintiff by repudiating it

264. Tennessee State Athletic Commission has wrongfully terminated Mendy's license, treated him disparately and committed other acts of discrimination. Therefore, Plaintiff may recover the expenses of this litigation including, but not limited to, reasonable attorneys' fees and costs, for all of which the state defendants are liable.

265. Pursuant to Tennessee Law, Plaintiff also may recover attorney fees and expenses of litigation related to one or more of the other causes of action and for which Defendants are jointly and severally liable.

266. Defendants' conduct has been in bad faith, stubbornly contentious and/or caused Plaintiff Mendy unnecessary trouble and expense, and on account thereof, Plaintiff Mendy is entitled to recover the expenses of this litigation including, but not limited to, attorneys' fees, for all of which Defendant are jointly and severally liable.

## **TRIAL BY JURY**

267. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff, Edward Bissau Mendy, prays that Defendants be duly cited to appear and answer this Petition; that Defendants be served with a copy thereof and that, after the lapse of all legal delays and due proceedings had, there be judgment herein in favor of the Plaintiff, Edward Bissau Mendy, and against Defendants for pain and suffering, mental anguish, emotional distress, past, present, and future loss of enjoyment of life and pursuit of happiness, and reasonable attorney's fees and court costs incurred in connection with the litigation of this matter. Plaintiff further prays that he be granted any and all such further relief for which he is entitled under the law.

Plaintiff also prays that Defendants be cited and served with a copy of this Petition and that, after all legal delays and due proceedings are had, that there be judgment rendered in favor of the Plaintiff Edward Bissau Mendy, and against Defendants, individually and jointly and severally, as well as their insurers.

Plaintiff further prays that this court direct Defendants to make Plaintiff whole for all earnings and benefits Plaintiff would have received but for Defendants' licensing discrimination, breach of contract, inducement of breach and other the causes of action.

Plaintiff further prays that this court award him general damages in amount to be proven

at trial.

Plaintiff further prays that this court award Plaintiff special damages in amount to be proven at trial.

Plaintiff further prays that this court award compensatory damages in amount to be proven at trial.

Plaintiff further prays that this court award him exemplary and punitive damages in an amount to be proven at trial.

Plaintiff further prays that this court award Plaintiff the costs of this action together with reasonable attorney fees in an amount to be proven at trial, as provided for by law.

Plaintiff further prays that this court award interest on all damages and attorneys' fees from the date of original judicial demand until paid for all damages that accrue as result of that Defendants acts, plus legal interest on all damages from the date of the original judicial demand until paid.

Plaintiff further prays that this court grant such other and further legal and equitable relief as this court deems necessary and proper, and adjudges after a trial is had herein.

Respectfully submitted,

**EDWARD BISSAU MENDY**

EDWARD BISSAU MENDY, pro se
3718 Gentilly Boulevard
New Orleans, LA 70122
Telephone:     (504) 339-4782
Facsimile:     (504) 292-560
EBMendy@me.com
*Proper Person Plaintiff*

 **UNITED S...**
**POSTAL S...**

**Retail**

P | US POSTAGE PAID
**$10.10**
Origin: 70118
05/13/25
2165730018-21

**PRIORITY MAIL®**

0 Lb 12.40 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 05/18/25

**C019**

SHIP
TO:
719 CHURCH ST
NASHVILLE TN 37203-7094



**USPS TRACKING® #**

9505 5163 2427 5133 8502 73

**FLAT RATE EN...**
ONE RATE ■ ANY WEIGHT...

**TRACKED ■ INS...**



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2


PAPER
POUCH

- Expected delivery date speci...
- Domestic shipments include ...
- USPS Tracking® service inclu...
- Limited international insuranc...
- When used internationally, a...

*Insurance does not cover certain item...
Domestic Mail Manual at http://pe.usp...
** See International Mail Manual at http...

**FLAT RATE EN...**

This package is made from post-consumer waste. Please recycle • again.

**FLAT RATE ENVELOPE
POSTAGE REQUIRED**

**PRIORITY
★ MAIL ★**

**UNITED STATES
POSTAL SERVICE ®**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: MR EDWARD B MERRY
3718 GENTILLY BLD
MoLA 70122
RECEIVED

MAY 19 2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

CLERK OF COURT
MIDDLE DISTRICT OF
TENNESSEE
719 CHURCH STREET
NASHVILLE
TN 37203

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE